## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| STEPHEN BUSHANSKY, on Behalf of Himself and All Others Similarly Situated, | ) ) ) | Case No. |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS |
| MULTI PACKAGING SOLUTIONS INTERNATIONAL LIMITED, MARC SHORE, ZEINA BAIN, GEORGE BAYLY, RICHARD H. COPANS, ERIC KUMP, GARY MCGANN, THOMAS S. SOULELES, and JASON TYLER, | ) ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| Defendants. | ) ) ) ) | |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.     Plaintiff brings this class action on behalf of the public stockholders of Multi Packaging Solutions International Limited ("MPS" or the "Company") against MPS and the members of MPS's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rules 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 229.1015(b)(4), arising out of their attempt to sell the Company to WestRock Company ("WestRock").

2.     On January 24, 2017, MPS and WestRock issued a joint press release announcing

they had entered into an Agreement and Plan of Merger dated January 23, 2017 ("Merger Agreement").  Under the terms of the Merger Agreement, WestRock, through its wholly-owned subsidiary, WRK Merger Sub Limited ("Merger Sub"), will acquire all of the outstanding shares of MPS for $18.00 per share in cash (the "Merger Consideration") (the "Proposed Transaction"). The Proposed Transaction is valued at approximately $2.28 billion.

3.      On March 3, 2017, MPS filed a Definitive Proxy Statement on Schedule 14A (the "Proxy"), which set the stockholder vote date on the Proposed Transaction for April 5, 2017. The Proxy, which recommends that MPS stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) MPS management's projections, utilized by the Company's financial advisor, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch") in its financial analyses; and (ii) the valuation analyses performed by BofA Merrill Lynch in connection with the rendering of its fairness opinion.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4.      In short, the Proposed Transaction is designed to unlawfully divest MPS's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders.  To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the stockholder vote unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder

pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  MPS is incorporated in Bermuda and headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

10.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of MPS.

12.      MPS is a Bermuda exempted company incorporated under the laws of Bermuda, with its North American headquarters located at 150 E. 52nd Street, 28th Floor, New York, NY 10022.

13.      Defendant Marc Shore ("Shore") is the founder and Chief Executive Officer ("CEO") of the Company and has been Chairman of the Board since October 2015.

14.      Defendant Zeina Bain ("Bain") has been a director of the Company since October 2015.

15.     Defendant George Bayly ("Bayly") has been a director of the Company since October 2015.

16.     Defendant Richard H. Copans ("Copans") has been a director of the Company since October 2015.

17.     Defendant Eric Kump ("Kump") has been a director of the Company since June 2015.

18.     Defendant Gary McGann ("McGann") has been a director of the Company since October 2015.

19.     Defendant Thomas S. Souleles ("Souleles") has been a director of the Company since June 2015.

20.     Defendant Jason Tyler ("Tyler") has been a director of the Company since January 2016.

21.     Defendants Shore, Bain, Bayly, Copans, Kump, McGann, Souleles and Tyler are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22.     WestRock is a Delaware corporation with its principal executive offices located at 501 South 5th Street, Richmond, Virginia.  WestRock is a multinational provider of paper and packaging solutions for consumer and corrugated packaging markets.

23.     Merger Sub is a Bermuda exempted company and a wholly-owned subsidiary of WestRock.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own MPS common stock (the

"Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

25.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

26.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of March 3, 2017, there were 77,702,500 shares of common stock issued and outstanding.  All members of the Class may be identified from records maintained by MPS or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

28.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

29.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

31.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole and are causing injury to the entire Class.   Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

**Company Background and its Strong Financial Outlook**

32.     MPS is a global provider of value-added specialty packaging solutions, including premium folding cartons, inserts, labels and rigid packaging across a variety of substrates and finishes.   The Company also provides value-added services, such as creative design, new product development and customized supply chain solutions.   The Company's global manufacturing footprint consists of 59 manufacturing sites and eight sales offices across North America, Europe and Asia.

33.     On February 14, 2014, MPS completed a transformational merger with Chesapeake Finance 2 Limited ("Chesapeake"), and since then has completed seven acquisitions, expanding the Company's global reach and diversifying its product and end market profile.

34.     On August 22, 2016, the Company announced its fourth quarter and fiscal year 2016 financial results.   For the quarter, GAAP operating income was $10.3 million, compared to $9.5 million in the fourth quarter of 2015.   For the year, GAAP sales were $1.66 billion, compared to $1.62 billion in fiscal year 2015.   GAAP operating income for the year was $84.1 million, compared to $71.0 million in fiscal year 2015.   Adjusted EBITDA was $254.3 million,

compared to $231.0 million in fiscal year 2015.  Defendant Shore commented on the financial

results, stating:

> We had a very successful 2016, notwithstanding some significant challenges. EBITDA was a record $254.3 million despite a negative foreign exchange impact of $12.4 million. EBITDA margin grew by 100 basis points over the prior year to 15.3%. The business also generated approximately $109 million of free cash flow which allowed us to make early debt repayments of $60 million

> * * *

> As we enter fiscal 2017, we are enthusiastic about our prospects. Our facility improvement plan is gaining traction and other measures that we have taken to enhance profitability are also being implemented. The company also remains committed to sourcing strategic and accretive acquisitions and there are several opportunities in the pipeline.

35.     On November 8, 2016, the Company announced its financial results for the first

quarter of fiscal year 2017.  GAAP net income attributable to MPS was $13.3 million, compared

to $13.0 million in the first quarter.  Commenting on the quarter's financial results, defendant

Shore stated:

> Notwithstanding these headwinds, there were significant accomplishments in the quarter. We have a robust pipeline of new business which we will start benefiting from in early 2017. This is driven in part by our ability to give customers consistently high quality products on a global basis. MPS has also completed two strategic acquisitions in October and November that will enhance our offering for both labels in Europe and transaction cards in North America. These acquisitions currently have combined annual revenue of $25 million.

> * * *

> In summary, the first half of fiscal 2017 will be challenging. However, we are confident that the new sales pipeline, significant cost cutting measures, optimization of footprint, and strategic acquisitions will create momentum in the fiscal second half and drive our future growth and success.

36.     Most recently, on February 13, 2017, the Company issued a press release

announcing its financial results for its second quarter of fiscal year 2017.  The Company reported

GAAP operating income of $24.9 million, compared to $7.1 million in the second quarter of

2016.  For the year to date, GAAP operating income was $52.6 million, compared to $47.8 million in the prior year period.  GAAP net income attributable to MPS for the year to date was $12.1 million, or $0.16 per share, compared to $5.1 million, or $0.08 per share, in the prior year period.  During the quarter, the Company completed acquisitions of US-based i3 Plastic Cards and UK-based AJS Labels.

**The Sale Process**

37.    On September 26, 2016, Steven Voorhees ("Voorhees"), President and CEO of WestRock, met with defendant Souleles to express WestRock's interest in acquiring the Company.  The next day, Voorhees sent defendant Souleles a letter proposing an all-cash acquisition of MPS by WestRock.

38.    Throughout October and November 2016, MPS and WestRock discussed a potential transaction between the two companies.

39.    On December 13, 2016, Voorhees delivered a written proposal to defendant Shore providing for an acquisition of MPS for an all-cash purchase price of $17.50 per share.

40.    At a December 19, 2016 Board meeting, the Board determined that WestRock's $17.50 per share proposal was unsatisfactory, but also determined not to contact additional parties at that time.

41.    On December 23, 2016, MPS and WestRock executed a non-disclosure agreement.

42.    On December 30, 2016, WestRock revised its proposal to a purchase price of $18.00 per share.  Following receipt of this proposal and through signing of the Merger Agreement, MPS, WestRock, and their legal advisors negotiated the terms of the Merger Agreement.

43.     On January 23, 2017, BofA Merrill Lynch rendered its fairness opinion, the Board approved the Merger Agreement, and MPS and WestRock executed the Merger Agreement.

**The Proposed Transaction**

44.     The next day, WestRock and MPS issued a joint press release announcing entry into the Merger Agreement, which stated in relevant part:

> NORCROSS, Ga. and NEW YORK, Jan. 24, 2017 -- WestRock Company (NYSE:WRK) and Multi Packaging Solutions International Limited (NYSE:MPSX) ("MPS") announced today that a definitive agreement has been reached for WestRock to acquire all of the outstanding shares of MPS for $18.00 per share in cash and the assumption of an estimated $873 million in net debt, for a total enterprise value of $2.28 billion. This enterprise value represents a trailing twelve-month adjusted EBITDA multiple as of September 30, 2016, of 9.6 times, and 7.1 times including anticipated synergy and performance improvements. The acquisition is expected to be immediately accretive to WestRock's financial results, both on an earnings per share basis and cash flow basis, inclusive of purchase accounting adjustments.

> Founded in 2005, and headquartered in New York, NY, MPS is a recognized leading global provider of print-based specialty packaging solutions. MPS' differentiated product offering includes premium folding cartons, inserts, labels, and rigid packaging, and it serves a diverse, blue chip customer base, primarily in the growing consumer and healthcare sectors. The company serves its customers on a global basis through 59 locations across North America, Europe and Asia. On a trailing twelve-month basis as of September 30, 2016, MPS generated revenue of $1.6 billion and Adjusted EBITDA of $237 million.

> The transaction will be financed through a combination of cash on hand and existing credit facilities. WestRock expects to refinance existing MPS debt assumed as part of the transaction upon closing.

> "The acquisition of MPS is an important step forward that advances our strategy and will create significant value for our customers, employees and shareholders," said Steve Voorhees, chief executive officer of WestRock. "Through this transaction, we will add a leader in the value-added packaging sector that strengthens our differentiated portfolio of paper and packaging solutions. Led by their talented management team, MPS shares our commitment to provide our customers with differentiated packaging solutions that help them win in the marketplace.

**Insiders' Interest in the Proposed Transaction**

45.     WestRock and MPS insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of MPS.

46.     Notably, defendant Shore and MPS President Dennis Kaltman ("Kaltman") have each secured a position for themselves with the combined company following completion of the Proposed Transaction – a unique opportunity not available to the Company's public stockholders.

47.     Moreover, upon consummation of the merger, MPS's directors and officers will receive cash payments for all outstanding Company restricted stock awards and performance-based stock unit awards, vested or unvested – an opportunity that would not otherwise be available.

48.     Additionally, if they are terminated in connection with the merger, defendant Shore and certain members of Company management stand to receive substantial severance benefits in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($) (1) | Equity ($) (2) | Perquisites/ Benefits ($) (3) | Tax Reimbursement ($) | Other ($)(4) | Total ($) |
|---|---|---|---|---|---|---|
| Marc Shore | 750,000 | 3,941,532 | 18,000 | — | $ 1,250,953 | $ 5,960,485 |
| Dennis Kaltman | 500,000 | 1,759,662 | 18,000 | — | $ 561,000 | $ 2,838,662 |
| Rick Smith | 239,736 | 494,658 | — | — | $ 119,989 | $ 865,291 |
| William H. Hogan | — | 879,840 | — | — | $ 448,800 | $ 1,328,640 |
| Ross Weiner | — | 160,254 | — | — | $ 88,037 | $ 248,291 |

## The Materially Misleading and Incomplete Proxy

49.     Defendants have failed to provide stockholders with material information necessary for an informed vote on the Proposed Transaction.  The Proxy, which recommends that the

Company's stockholders vote in favor of the Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *Material Omissions Concerning MPS's Financial Projections*

50.     The Proxy is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

51.     The Proxy omits material information regarding MPS management's financial projections.  Specifically, the Proxy fails to disclose, for the fiscal years ended June 30, 2017 through June 30, 2019, the following items: (i) interest; (ii) taxes; (iii) stock-based compensation; (iv) net operating losses ("NOLs") (for fiscal years 2017 through 2032); and (v) unlevered free cash flows; and (vi) a reconciliation of all non-GAAP to GAAP metrics.

52.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     From page 45 of the Proxy:

Certain of the measures included in the Management Forecast may be considered non-GAAP financial measures, as noted below. Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by MPS may not be comparable to similarly titled amounts used by other companies.

The following table reflects selected measures from, or generated using, the Management Forecast prepared by MPS management and, at MPS's direction, used by BofA Merrill Lynch in connection with the rendering of its fairness opinion to the MPS board of directors and in performing the related financial analyses summarized under "—Opinion of MPS's Financial Advisor." WestRock received the Management Forecast prior to signing the merger agreement.

| | Fiscal Year Ending June 30, | | |
|---|---|---|---|
| (Dollars in millions, except per share data) | 2017E | 2018E | 2019E |
| Net Sales | $ 1,561 | $ 1,617 | $ 1,631 |
| Net Income | $ 54 | $ 88 | $ 103 |
| EBITDA(1) | $ 238 | $ 270 | $ 274 |
| Depreciation | $ 67 | $ 65 | $ 64 |
| Amortization | $ 51 | $ 48 | $ 41 |
| EBIT(1) | $ 120 | $ 157 | $ 169 |
| Capital expenditures | $ 60 | $ 58 | $ 58 |

(1)     EBITDA is defined as net income excluding net interest expense, income tax expense, depreciation and amortization. EBIT is defined as net income excluding net interest expense and income tax expense. EBIT and EBITDA are non-GAAP financial measures and should not be considered as an alternative to operating income or net income as a measure of operating performance or cash flow or as a measure of liquidity.

### *Material Omissions Concerning BofA Merrill Lynch's Financial Analyses*

53.     The Proxy describes BofA Merrill Lynch's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of BofA Merrill Lynch's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, MPS's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on BofA Merrill Lynch's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to MPS's stockholders.

54.     For example, BofA Merrill Lynch performed a *Discounted Cash Flow* ("*DCF*") *Analysis* of MPS that was presented to the Board, yet the Proxy fails to disclose (i) the definition of unlevered free cash flow utilized by BofA Merrill Lynch in its analysis; (ii) the estimated present value of certain U.S. federal NOLs MPS was forecasted to realize during MPS's fiscal year 2017 through fiscal year 2032 utilized by BofA Merrill Lynch in its analysis; (iii) the terminal year estimated unlevered, after-tax free cash flows utilized by BofA Merrill Lynch in its analysis; and (iv) the individual inputs and assumptions utilized by BofA Merrill Lynch to derive the discount rate range for MPS of 8.2% to 9.8%.

55.     In addition, BofA Merrill Lynch performed a *Selected Publicly Traded Companies Analysis* of MPS that was presented to the Board, yet the Proxy fails to disclose the

individual multiples for each of the selected comparable companies analyzed by BofA Merrill Lynch, as well as the objective selection criteria and any benchmarking analyses BofA Merrill Lynch performed for MPS in relation to the selected public companies.

56.     Further, with respect to BofA Merrill Lynch's *Selected Precedent Transactions Analysis* that was presented to the Board, the Proxy fails to disclose the individual multiples for each of the selected transactions analyzed by BofA Merrill Lynch and the Board, as well as the objective selection criteria and any benchmarking analyses BofA Merrill Lynch performed.

57.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     From pages 39-41 of the Proxy:

*Selected Publicly Traded Companies Analysis.* BofA Merrill Lynch reviewed publicly available financial and stock market information for MPS and nine selected publicly traded companies in the packaging and containers industry. Estimated financial data of the selected publicly traded companies were based on publicly available research analysts' estimates, and estimated financial data of MPS was based on the MPS Forecast. The nine selected publicly traded companies include:

- Amcor Limited

- AptarGroup, Inc.

- Bemis Company, Inc.

- Berry Plastics Group, Inc.

- CCL Industries Inc.

- Graphic Packaging Holding Company

- Multi-Color Corporation

- Sealed Air Corporation

- WestRock Company

For purposes of the analysis, BofA Merrill Lynch analyzed the following statistics for MPS and each of the selected publicly traded companies for comparison purposes:

- estimated calendar year 2016 to estimated calendar year 2018 earnings before interest, taxes, depreciations and amortization ("EBITDA") compound annual growth rate ("CAGR"), each case adjusted for any announced acquisitions expected to close in 2017; and

- estimated calendar year 2017 EBITDA margin.

The following table sets forth the underlying observed data for each of the statistics considered:

| | High (1) | Low (1) | Mean (1) | Median (1) | MPS |
|---|---|---|---|---|---|
| CY2016E–CY2018E EBITDA CAGR | % 6.5 | % 3.3 | % 4.8 | % 4.8 | % 1.9 |
| CY2017E EBITDA Margin | % 20.8 | % 15.3 | % 17.9 | % 17.9 | % 15.1 |

(1)      Excludes MPS

BofA Merrill Lynch reviewed the enterprise value ("EV") of MPS and each of the selected publicly traded companies, calculated as the market value of equity based on closing stock prices on January 20, 2017, plus debt, plus non-controlling interest, less cash and marketable securities, as a multiple of calendar year 2017 estimated EBITDA, in each case adjusted for any announced acquisitions expected to close in 2017. The observed high and low multiples were 11.2x and 7.8x, respectively. The observed mean and median multiples, excluding MPS, were 9.9x and 10.4x, respectively. After taking into consideration the observed data for the selected publicly traded companies and for MPS, BofA Merrill Lynch then applied EV to calendar year 2017 estimated EBITDA multiples of 8.0x to 10.5x derived from the selected publicly traded companies to MPS's calendar year 2017 estimated EBITDA from the MPS Forecast. This analysis indicated the following approximate implied per share equity value reference range for MPS (rounded to the nearest $0.05), as compared to the per share merger consideration:

| EV/CY2017E EBITDA | Per Share Merger Consideration |
|---|---|
| $14.95 – $23.00 | $18.00 |

No company used in this analysis is identical or directly comparable to MPS. Accordingly, an evaluation of the results of this analysis is not entirely mathematical. Rather, this analysis involves complex considerations and judgments concerning differences in financial and operating characteristics and other factors that could affect the public trading or other values of the companies to which MPS was compared.

*Selected Precedent Transactions Analysis* . BofA Merrill Lynch reviewed, to the extent publicly available, financial information relating to the following fourteen selected transactions involving companies in the packaging and containers industry:

| Announcement Date | Acquiror | Target |
|---|---|---|
| 4/25/16 | • Ardagh Group SA | Ball Corporation / Rexam Plc Divested Assets |
| 6/8/15 | • Apollo Global Management LLC | Verallia SA (Saint-Gobain) |
| 5/13/15 | • Owens-Illinois Inc. | Vitro SAB de CV – Food & Beverage Glass Containers |
| 2/19/15 | • Ball Corporation | Rexam Plc |
| 1/26/15 | • Rock-Tenn Co. | MeadWestvaco Corporation |
| 12/14/14 | • Graphic Packaging Holding Corporation | Cascades Inc.'s folding carton assets |
| 11/12/14 | • Essentra Plc | Clondalkin Group – Specialist Packaging Segment |
| 9/1/14 | • Crown Holdings, Inc. | EMPAQUE |
| 2/14/14 | • Graphic Packaging Holding Corporation | Benson Group |
| 10/31/13 | • Crown Holdings, Inc. | Mivisa Envases, S.A.U. |
| 7/8/13 | • Madison Dearborn Partners, LLC | Multi Packaging Solutions Inc. |
| 3/19/13 | • Essentra plc | Contego Healthcare Limited (Platinum Equity) |
| 11/12/12 | • Graphic Packaging Holding Corporation | Contego Packaging Holdings, Ltd.'s European Food Carton Business |
| 10/2/12 | • Platinum Equity, LLC | BWAY Parent Company, Inc. |

BofA Merrill Lynch reviewed each target company's enterprise value, as reported in publicly available information, as a multiple of the target company's last twelve months ("LTM") EBITDA, other than the acquisition of Clondalkin Group's Specialist Packing Segment by Essentra plc and the acquisition of EMPAQUE by Crown Holdings, Inc., for which LTM EBITDA was not available. BofA Merrill Lynch instead considered Clondalkin Group's Specialist Packing Segment's 2013 actual EBITDA and EMPAQUE's 2014 projected EBITDA in each case as reported in publicly available information. The observed high and low multiples were 10.3x and 6.6x, respectively. The observed mean and median multiples were 8.2x and 8.0x, respectively. BofA Merrill Lynch then applied EV to LTM EBITDA multiples of 7.5x to 9.5x derived from the selected transactions to MPS's LTM EBITDA as of September 30, 2016. Financial data of the selected transactions and MPS were based on publicly available information at the time of announcement of the relevant transaction, and estimated financial data of MPS was based on the MPS Forecast. This analysis indicated the following approximate implied per share equity value reference range for MPS (rounded to the nearest $0.05), as compared to the per share merger consideration:

| EV/LTM (9/30/16) EBITDA | Per Share Merger Consideration |
|---|---|
| $11.75 – $17.75 | $18.00 |

No company, business or transaction used in this analysis is identical or directly comparable to MPS or the merger. Accordingly, an evaluation of the results of this analysis is not entirely mathematical. Rather, this analysis involves complex considerations and judgments concerning differences in financial and operating characteristics and other factors that could affect the acquisition or other values of the companies, business segments or transactions to which MPS and the merger were compared.

*Discounted Cash Flow Analysis.* BofA Merrill Lynch performed a discounted cash flow analysis of MPS using the perpetuity growth method to calculate the estimated present value of the standalone unlevered, after-tax free cash flows that MPS was forecasted to generate during MPS's third quarter of fiscal year 2017 through fiscal year 2019 and the estimated present value of certain U.S. federal net operating losses ("NOLs") MPS was forecasted to realize during MPS's fiscal year 2017 through fiscal year 2032, in each case based on the MPS Forecast. BofA Merrill Lynch calculated terminal values for MPS by applying selected perpetuity growth rates of 0.5% to 1.5% to MPS's terminal year estimated unlevered, after-tax free cash flows. The cash flows, U.S. federal NOLs and terminal values were then discounted to present value as of December 31, 2016 using discount rates ranging from 8.2% to 9.8%, which were based on an estimate of MPS's weighted average cost of capital. This analysis indicated the following approximate implied per share equity value reference range for MPS (rounded to the nearest $0.05), as compared to the per share merger consideration:

| Implied Per Share Equity Value Reference Range for MPS | Per Share Merger Consideration |
|---|---|
| $12.70 – $20.80 | $18.00 |

BofA Merrill Lynch also performed a discounted cash flow analysis of MPS using the terminal multiple method to calculate the estimated present value of the standalone unlevered, after-tax free cash flows that MPS was forecasted to generate during MPS's third quarter of fiscal year 2017 through fiscal year 2019 and the estimated present value of certain U.S. federal NOLs MPS was forecasted to realize during MPS's fiscal year 2017 through fiscal year 2032, in each case based on the MPS Forecast. BofA Merrill Lynch calculated terminal values for MPS by applying terminal forward multiples of 7.5x to 9.5x to MPS's fiscal year 2019 estimated EBITDA. The cash flows, federal NOLs and terminal values were then discounted to present value as of December 31, 2016 using discount rates ranging from 8.2% to 9.8%, which were based on an estimate of MPS's weighted average cost of capital. This analysis indicated the following approximate implied per share equity value reference range for MPS (rounded to the nearest $0.05), as compared to the per share merger consideration:

| Implied Per Share Equity Value Reference Range for MPS | Per Share Merger Consideration |
|---|---|
| $14.80 – $21.30 | $18.00 |

58.    Defendants' failure to provide MPS stockholders with the foregoing material information renders the statements in the "Opinion of BofA Merrill Lynch" and "Certain Financial Forecasts" sections of the Proxy false and/or materially misleading and constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

59.    Plaintiff repeats all previous allegations as if set forth in full.

60.    SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61.    During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

62.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was prepared, reviewed, and/or disseminated by the defendants.  The Proxy misrepresented and/or omitted material facts, including material information about the unfair sale process for the Company, the financial analyses performed by the Company's financial advisor, and the actual intrinsic standalone value of the Company.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

63.    The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders.

64.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

65.    Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

66.     Plaintiff repeats all previous allegations as if set forth in full.

67.     The Individual Defendants acted as controlling persons of MPS within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of MPS and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

68.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

70.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed

Transaction.   The Proxy purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

71.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

72.     Plaintiff and the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of MPS, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to MPS stockholders;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: March 6, 2017                    **WeissLaw LLP**

                         By:   _/s/ Richard A. Acocelli_
                               Richard A. Acocelli
                               Michael A. Rogovin
                               1500 Broadway, 16th Floor
                               New York, NY 10036
                               Telephone: (212) 682-3025
                               Facsimile: (212) 682-3010

                               *Attorneys for Plaintiff*